FILED

May 18, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 10:57 AM



## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

EMPLOYEE: WALLACE WALLIN

EMPLOYER: PEPSICO

INSURANCE CARRIER: INDEMNITY INS. CO. OF NA

CLAIMS MGT: SEDGWICK

DOCKET #: 2014-02-0050
STATE FILE #: 83254-2014
DATE OF INJURY: 10/14/2014

### EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge on May 8, 2015, upon the Request for Expedited Hearing filed by Wallace Wallin (Mr. Wallin), the employee, on February 23, 2015, pursuant to Tennessee Code Annotated section 50-6-239 to determine if the Employer, PEPSICO (Pepsi), is obligated to provide temporary partial disability benefits. Ms. Jill Talley represented Mr. Wallin. Mr. Ned Babb represented Pepsi. Considering the applicable law, testimony of the witnesses, documentary evidence, argument of counsel and the technical record, this Court finds that Mr. Wallin is not entitled to the requested disability benefits.

### ANALYSIS

#### Issue

Whether Mr. Wallin is entitled to temporary partial disability benefits from November 10, 2014, through February 1, 2015.

#### Evidence Submitted

The following witnesses testified:

- Mr. Wallin
- Ms. Lobrane Greene-Transportation Supervisor.

The Court designated the following as the technical record:

- Petition for Benefit Determination

1

- Dispute Certification Notice
- Request for Expedited Hearing.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings as allegations unless established by the evidence.

The Court admitted the following into evidence:

- Exhibit 1: Affidavit of Mr. Wallin (2 pages)
- Exhibit 2: Affidavit of Rachel Still, Quality Manager (2 pages)
- Exhibit 3: Medical Records (238 pages).

## Stipulations of the Parties

The Parties agreed to the following stipulated facts:

- The only period of temporary partial disability in question is November 10, 2014, through February 1, 2015.
- Dr. John Reynolds, the authorized treating physician (ATP), released Mr. Wallin for work with a restriction of no use of his left arm for the period in question.
- Mr. Wallin's compensation rate is $731.82.

## History of Claim

Mr. Wallin worked as a transport driver for Pepsi. He performed no other duties for Pepsi prior to his injury. He suffered an injury to his left arm and other body parts in a motor vehicle accident on October 14, 2014. Pepsi accepted compensability of the claim and provided medical and temporary disability benefits.

Pepsi provides transitional duty to its injured employees to facilitate recovery by offering employees light-duty work according to the employees' work-restrictions.

Dr. Reynolds initially placed Mr. Wallin off work following surgery on October 20, 2014, but he modified Mr. Wallin's restriction to no use of his left arm on Friday, October 31, 2014. Dr. Reynolds prescribed pain medication following the surgery, but Mr. Wallin testified that he did not take the medicine as prescribed because he felt he could not work while taking the medicine.

Mr. Wallin did not work over the weekend but reported to work on Monday, November 3, 2014. He gave his work restriction to Ms. Greene. Mr. Wallin initially sat in the conference room for two to three hours, and then Ms. Greene brought him a short stack of citations to sort. Mr. Wallin sat at a table as he sorted the citations. He testified that he had trouble sorting the papers using only one hand, so he used his left hand "to hold down the papers and stuff." Ms. Greene testified that she observed Mr. Wallin holding a coffee cup in his left hand during the same time period.

After he sorted the citations, Ms. Greene sent Mr. Wallin to Ms. Rachel Still, quality manager, for additional work. Ms. Still asked Mr. Wallin to sort paperwork. Mr. Wallin testified that he had the same problem holding the paperwork that he had with the citations. Mr. Wallin also made copies on a copying machine but did not use his left arm to make those copies.

On November 4, 2014, Mr. Wallin reported to Ms. Still. She asked him to inspect empty, plastic, twenty- (20) ounce bottles. Mr. Wallin testified that Ms. Still asked him to hold the bottle up to the sunlight and mark the impurities in the bottle with his other hand. Mr. Wallin testified that he could not perform the task because it caused pain in his left arm to hold and mark the bottles. He made a comment to others in the room that his arm hurt. Later in the day, Ms. Still asked Mr. Wallin to file paperwork in a filing cabinet. Mr. Wallin testified that he had to use one arm to separate the files while he used the other hand to place the paperwork in the files. Mr. Wallin testified that he told Ms. Still that he had to use his left arm to file the paperwork, and that Ms. Still replied, "Do the best you can."

Later on November 4, Mr. Wallin reported to Nancy Meeker, supply chain coordinator, for further work assignment. Ms. Meeker asked Mr. Wallin to follow the janitor and wipe a countertop or mirror with his right hand. Mr. Wallin testified that his injured fingers and hand began to swell that afternoon.

On November 5, 2014, Mr. Wallin filed paperwork for Ms. Still. Mr. Wallin testified that he had to use his left arm to do the filing.

On November 6, 2014, Mr. Wallin filed paperwork. He told Wayne Bevins, a co-worker, that his arm hurt. Mr. Wallin spoke to Ms. Greene about his arm after he finished filing. He told her that he had tried to call Dr. Reynolds on two occasions because his arm hurt. Ms. Greene told him that if his arm hurt that badly, he ought to go to the doctor, so Mr. Wallin left work and went to Dr. Reynolds' office. Dr. Reynolds was not there. His staff scheduled Mr. Wallin an appointment with Dr. Reynolds for the following morning (Ex. 3, page 133).

Mr. Wallin saw Dr. Reynolds on November 7, 2014. Mr. Wallin told Dr. Reynolds that he had noticed drainage from his wound and suffered pain, "….not in the forearm, but mostly in the posterior left chest wall just below the scapula (Ex. 3, page 109)." Dr. Reynolds sent Mr. Wallin for a CT scan of his thorax region and took Mr. Wallin off work until his next appointment (Ex. 3, page 110).

Mr. Wallin returned to Dr. Reynolds on November 10, 2014, and primarily complained of pain in his thorax area. Dr. Reynolds ordered physical therapy for the affected area. Concerning Mr. Wallin's forearm, Dr. Reynolds advised continued use of a brace and encouraged Mr. Wallin to work on active range of motion (Ex. 3, pages 107-8). Mr. Wallin called Ms. Greene after his appointment and told her that Dr. Reynolds had not changed his work restriction. Mr. Wallin also told Ms. Greene that he had used his left arm the prior week at work.

After November 10, 2014, Mr. Wallin did not return to work except for a few days in

3

December.[1]  He called work every day, spoke to Ms. Greene, and told her "he could not handle it that day."

On December 15, 2014, Mr. Wallin returned to Dr. Reynolds. Dr. Reynolds recommended that a spine specialist examine him (Ex. 3, page 197). Dr. Reynolds made the same recommendation on January 12, 2015 (Ex. 3, page 196). Dr. Reynolds's focus was Mr. Wallin's neck and shoulder. His arm had continued to heal, and he could move it well (Ex. 3, page 103). Mr. Wallin saw Dr. Patrick Bolt's physician assistant, Ashley Self (PA Self), on February 2, 2015. PA Self excused Mr. Wallin from work. Pepsi has paid Mr. Wallin temporary total disability benefits since that date.

Ms. Greene testified that Pepsi had transitional duty work for Mr. Wallin from November 10, 2014 through February 1, 2015. Mr. Wallin, however, chose not to work.

Mr. Wallin's Petition for Benefit Determination (PBD) requested medical benefits. The parties did not reach an agreement on the issue.

### Mr. Wallin's Contentions

Mr. Wallin contends that he is entitled to the temporary partial disability benefits over the period from November 10, 2014, through February 1, 2015. He avers that Pepsi did not accommodate his work-restriction. The four days he did work following his release with restrictions caused him pain because Pepsi assigned him tasks that required use of his left arm. He further avers that he told his supervisors that his arm hurt prior to seeking further assistance from Dr. Reynolds. He asserts that his pain was so significant that PA Self excused him from work on February 2, 2015.

### Pepsi's Contentions

Pepsi contends that it had suitable work to accommodate Mr. Wallin's restriction. Instead of working within his restriction, Mr. Wallin chose not to work.

### Findings of Fact and Conclusions of Law

*Standard Applied*

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). Tennessee Code Annotated section 50-6-239(c)(6) provides that "[u]nless the statute provides for a different standard of proof, at a hearing, the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence." Tenn. Code Ann. § 50-6-239(c) (2014). A different standard of proof exists for the issuance of interlocutory orders at

---

[1] Pepsi did not pay Mr. Wallin for those days. The parties dispute the days and hours Mr. Wallin worked. For this Order, the Court disregarded the days, or portions of days, that Mr. Wallin worked in December.

Expedited Hearings than the standard of proof required at Compensation Hearings. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063 (Tenn. Work. Comp. App. Bd., March 27, 2015). A workers' compensation judge may enter an interlocutory order for medical or temporary benefits upon a determination that the injured employee would likely prevail at a hearing on the merits. Tenn. Code Ann. 50-6-239(d)(1) (2014); *cf. McCall v. Nat'l Health Care Corp.*, 100 S.W.3d 209, 214 (Tenn. 2003).

*Factual Findings*

The evidence proves that Mr. Wallin suffered a compensable injury on October 14, 2014. Dr. Reynolds provided Mr. Wallin work restrictions of no use of his left arm. Pepsi offered Mr. Wallin transitional duty for the period from November 10, 2014, through February 1, 2015. Mr. Wallin chose not to work because he suffered pain in his thorax region. Pepsi did not ask or require Mr. Wallin to violate Dr. Reynolds' recommended work restrictions.

*Application of Law to Facts*

The only issue is whether Mr. Wallin is entitled to temporary partial disability benefits from November 10, 2014, through February 1, 2015. Temporary partial disability benefits are sixty-six and two-thirds percent (66 $^{2/3}$ %) of the difference between the average weekly wage of the worker at the time of the injury and the wage the worker is able to earn in the worker's partially disabled condition. Tenn. Code Ann. § 50-6-207(2) (2014).

In the present case, Mr. Wallin chose not to work, but he alleged that Pepsi assigned him work that violated Dr. Reynolds' work restrictions. This Court, considering the preponderance of the evidence, determines that Mr. Wallin could have performed the work in question with just the use of his right arm. Even if he could not perform the work by just using his right arm, neither Ms. Still nor other supervisors made Mr. Wallin violate his restrictions. When Mr. Wallin complained to Ms. Still, she told him, "Do the best you can." Furthermore, during the period that Mr. Wallin complained of left arm pain from lifting bottles or filing papers, Ms. Greene noticed that Mr. Wallin carried a coffee cup in his left hand at work.

This Court also notes that Mr. Wallin's main complaint to Dr. Reynolds on November 7, 2014, and following concerned his thorax area, not his arm. Although Dr. Reynolds excused Mr. Wallin from work until November 10, 2014, he re-instituted "the no use of the left arm restriction" that day. The medical records prove Mr. Wallin's arm continued to improve during the period he told Pepsi that he could not work. Mr. Wallin did not present any note from Dr. Reynolds or Dr. Bolt stating that he could not work during the period in question. Mr. Wallin could have earned his average weekly wage if he reported to work.

Although this Court believes Mr. Wallin was in pain, he did not have an excuse to cover his absences. Since Pepsi was willing to provide him light-duty work at all times in question, Mr. Wallin has failed to prove that he is likely to prevail on this issue at a hearing on the merits.

**IT IS, THEREFORE, ORDERED** as follows:

1. That Mr. Wallin's request for temporary partial disability benefits from November 10, 2014, through February 1, 2015, is denied.

2. This matter is set for Initial Hearing on July 29, 2015, at 10:00 a.m. Eastern Time.

**ENTERED this the 18th day of May 2015.**

_____
**BRIAN K. ADDINGTON**
**Workers' Compensation Judge**

Initial Hearing:

An Initial Hearing has been set with Judge Brian K. Addington, Court of Workers' Compensation Claims. You must call 865-594-6538 or toll free at 855-543-5044 to participate in the Initial Hearing.

Please Note: You must call in on July 29, 2015, at 10:00 p.m. Eastern Time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time (ET).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal".

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must be approved by the Judge before the record is submitted to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 18th day of May, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Mail/Email Address |
|------|----------------|------------------|---------|------------|-----------|--------------------|
| J. Talley, Esq. | | | | | x | amy.jtalleylaw@gmail.com |
| N. Babb, Esq. | | | | | x | ebabb@byblaw.com |

PENNY SHRUM
CLERK OF THE COURT
WC.COURT CLERK@tn.gov

7